UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEYLIER HARRIS,<br><br>                        Plaintiff,<br><br>v.<br><br>SERGEANT F. SOTO, et al.,<br><br>                        Defendants. | Civ. No. 16-2551 (KM) (jbc)<br><br><br><br>OPINION |

The plaintiff, Keylier Harris, brings this civil rights action alleging malicious prosecution under 42 U.S.C. § 1983. The defendants are two New Jersey State Troopers, as well as the New Jersey State Police (NJSP) itself, and the State of New Jersey. This action arises from Mr. Harris's May 1, 2014 arrest, his prosecution, and his March 2, 2016 acquittal on weapons and assault charges. Defendants move to dismiss the Complaint for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, the motion will be granted in part and denied in part. The claims remaining are section 1983 claims of malicious prosecution against defendants Fidiberto Soto and Damon Crawford in their personal capacities.

I.   **The Amended Complaint**

The allegations of the Amended Complaint ("AC", ECF no. 5), assumed to be true for purposes of this motion only, are as follows.[1]

The plaintiff, Keylier Harris, is an African-American man, residing in East Orange. He has been diagnosed as a paranoid schizophrenic. (AC ¶¶ 2, 16) On May 1, 2014, the police received a report of an armed black male inside the Oasis Bar, located at the corner of Aldine Street and Lyons Avenue in Newark. The man was reportedly attempting to rob patrons of the bar. (AC ¶ 13)

---

[1]   I ignore *pro forma* allegations against unidentified John Doe defendants.

1

State Troopers Fidiberto Soto and Damon Crawford, defendants here, responded to the call. The police never obtained surveillance footage, never entered the Oasis Bar to investigate, never called for backup, and did not preserve the recording of the original 911 call. (AC ¶¶ 17–19)

At the scene, a black male with a handgun pushed Mr. Harris to the ground, discarded the gun, and ran away. (AC ¶¶ 14–15) The police became hostile and arrested Harris. One of them whispered racial slurs in his ears. (AC ¶ 16) Soto and Crawford pointed their weapons in Harris's face. They violently beat him. Soto broke his hand striking Harris in the face, but stated in medical records that he had hit a fence or pole. (AC ¶¶ 21–22) Harris suffered a 2 inch laceration to his left eye, an elbow fracture, and multiple contusions to his head. (AC ¶ 26)

The officers arrested Harris without probable cause and took him to Metro North Station. (AC ¶ 23) Crawford filed a false report to the effect that Harris's injuries resulted from a fall at the station. Crawford admitted he did not witness the fall, and could not name anyone who did. (AC ¶¶ 26, 27) After being held for four hours at Metro North, Mr. Harris was taken to UMDNJ Hospital for treatment. (AC ¶¶ 28, 29)

Crawford obtained an arrest warrant based on a false supporting affidavit. (AC ¶ 24) The initial charges included weapons offenses, resisting arrest, and aggravated assault. (AC ¶ 30) As a result, Harris was held on a parole violation, for which he was unable to make bail. (AC ¶¶ 32–33)

On December 19, 2014, Officer Crawford testified before the grand jury in connection with the obtaining of an Indictment. It charged (1) unlawful possession of a weapon (second degree); (2) aggravated assault of a police officer, Soto (third degree); (3) aggravated assault of a police officer, Crawford (third degree); (4) aggravated assault, Soto and Crawford (third degree); (5) aggravated assault, unidentified male (fourth degree); (6) resisting arrest (third degree); (7) unlawful possession of a weapon (first degree). (AC ¶ 34) Apparently counts 2 and 3 were voluntarily dismissed before trial. (*See* AC ¶¶ 35, 37)

A jury trial of the case began on February 16, 2016 in Superior Court, Essex County. Soto and Crawford testified falsely. The jury acquitted Mr. Harris of all charges. (AC ¶¶ 36–40) (The initial version of the complaint stated that Judge Gizzo entered a judgment of acquittal on March 2, 2016.)

The First Claim of the Amended Complaint (AC ¶¶ 48–64), which is now the only claim, alleges fourth amendment violations under 42 U.S.C. § 1983— in particular, malicious prosecution by Soto and Crawford, without probable cause. Immediately following are allegations intended to impose vicarious liability on the NJSP and the State of New Jersey.[2] The State and NJSP are alleged to be responsible for hiring and training officers, as well as for setting policies for interaction between officers and the public. (AC ¶¶ 59–60) NJSP was allegedly on notice of a pervasive practice of excessive use of force and unfounded accusations. (AC ¶¶ 61–63) The Troopers responsible are not disciplined. (AC ¶ 64) A copy of a 1999 consent decree, agreed to between the United States and NJSP, which governing various practices (particularly traffic stops), is attached to the amended complaint as an exhibit. (ECF no. 5-2)

## II.   Legal Standard

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion

---

[2]   The original version of the Complaint also named State Police Chief Joseph Fuentes, Acting Attorney General Robert Loughy, and the Office of the (State) Attorney General. These defendants remain in the caption, but have disappeared from the body of the Amended Complaint. Because no allegations are made against these defendants, I grant the motion to dismiss the Amended Complaint as against them.

The original version of the Complaint separately alleged vicarious liability in Count 2, and also alleged four more counts (equal protection/42 U.S.C. § 1983, state law malicious prosecution, conspiracy/42 U.S.C. § 1985, and failure to prevent civil rights violations/42 U.S.C. § 1986). These theories seemingly are no longer alleged, with the following caveat: Although the First (and only) Claim sounds in malicious prosecution, it still contains a catchall paragraph that refers to unreasonable seizure, use of excessive force, failure to provide medical care, and selection of Mr. Harris for investigation based on race. (AC ¶ 57)

to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The United States Court of Appeals for the Third Circuit has explicated the *Twombly/Iqbal* standard on several occasions. *See, e.g., Argueta v. U.S. Immigration & Customs Enforcement,* 643 F.3d 60, 70–73 (3d Cir. 2011); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129–30 (3d Cir. 2010). In doing so, it has provided a three-step process for analyzing a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal,* 556 U.S.] at 675; *Argueta,* 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal,* 556 U.S. at 679; *Argueta,* 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S.

> at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

### III. Analysis

The analysis of this matter is needlessly complicated by the parties' apparent inability to sort out the allegations as between the original and amended complaints. Leave to amend is granted freely under Fed. R. Civ. P. 15(a), and I do grant it. The amended complaint (ECF no. 5) will be treated as the operative pleading. That being the case, certain of the arguments have no bearing.

#### A.   Eleventh Amendment/ "Person" under § 1983

Defendants assert that jurisdiction is lacking under the Eleventh Amendment, or that they are not "persons" who are amenable to suit in their official capacities under 42 U.S.C. § 1983.[3] Because the Eleventh Amendment immunity is a limit on the subject matter jurisdiction of the federal court, it is properly asserted via Rule 12(b)(1). The interpretation of "person" as used in § 1983 goes to the issue of whether the complaint states a claim, a Rule 12(b)(6) issue. Because both arguments, in this case, are directed to the face of the complaint, the distinction makes little difference. *See generally Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983) ("facial" jurisdictional attack accepts allegations of complaint as true); *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999) (same).

---

[3]   Those Eleventh Amendment and § 1983 "person" grounds are closely parallel. *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66–67, 109 S. Ct. 2304, 2310 (1989) ("This does not mean, as petitioner suggests, that we think that the scope of the Eleventh Amendment and the scope of § 1983 are not separate issues. Certainly they are. But in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration, and we decline to adopt a reading of § 1983 that disregards it."). Cases, including mine, have for brevity run the two issues together. *See, e.g., Endl v. New Jersey*, 5 F. Supp. 3d 689, 696 (D.N.J. 2014) (McNulty, J.). Either way, the disqualifying factor is that the defendant is, or acts on behalf of, the State.

The Eleventh Amendment incorporates a general principle of sovereign immunity that bars citizens from bringing suits for damages[4] against any State in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–101, 104 S. Ct. 900, 908 (1984); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 1122 (1996); *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S. Ct. 1347, 1355 (1974); *Hans v. Louisiana*, 134 U.S. 1, 10, 10 S. Ct. 504, 505 (1890).

Section 1983 imposes liability on "[e]very *person*, who, acting under color of any statute, ordinance, regulation, custom, or usage, of any State" subjects a person to a deprivation of certain rights. 42 U.S.C. § 1983 (emphasis added). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Hafer v. Melo*, 502 U.S. 21, 26, 112 S. Ct. 358, 362 (1991) (quoting *Will*, 491 U.S. at 71, 109 S. Ct. at 2312). *See also Quern v. Jordan*, 440 U.S. 332, 350, 99 S. Ct. 1139 (1979). An action against a State employee or agent in that agent's official capacity is considered an action against the State itself, not one against a "person." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3104 (1985).

Harris concedes these principles, as he must. (Harris Brf. at 10) He acknowledges that the NJSP is immune as an agency of the State. (He makes the same concession as to the Office of the Attorney General, against which he no longer asserts any claim.)

Harris argues that the State itself, however, is not immune. He cites the State's statutory waiver of sovereign immunity in the New Jersey Tort Claims Act ("NJTCA"), although he cites irrelevant portions of it. *See* Harris Brf. at 11 (citing N.J. Stat. Ann. 59:1-2 (legislative declarations); N.J. Stat. Ann. § 59:13-3 (contract claims)).[5] Such a waiver is scrutinized under a "particularly strict

---

[4]   The Amended Complaint seeks compensatory and punitive damages, as well as attorneys' fees and costs.
[5]   Harris does not allege, by the way, that he has complied with the NJTCA. *See* N.J. Stat. Ann. § 59:8-3 ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter.").

6

standard." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305, 110 S. Ct. 1868, 1872 (1990). "[I]n order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit *in federal court.*" Id. at 306, 110 S. Ct. at 1873 (emphasis in original; quoting *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241, 105 S. Ct. 3142, 3146 (1985)). The NJTCA contains no such explicit, federal-court-specific language, and therefore does not waive Eleventh Amendment immunity with respect to an action in federal court. *Hyatt v. County of Passaic*, 340 F. App'x 833, 837 (3d Cir. 2009); *Graves v. Lanigan*, No. CV137591ESJAD, 2016 WL 4435673, at *3 (D.N.J. Aug. 17, 2016); *Clark v. State of New Jersey Dep't of Health*, No. CV127763FLWTJB, 2016 WL 4265724, at *4 (D.N.J. Aug. 12, 2016).

Even more oddly, Harris states that New Jersey never ratified the Eleventh Amendment; the implication seems to be that this particular amendment therefore does not apply within our State borders. (Harris Brf. at 11) That will come as news. Cases have long applied the Eleventh Amendment to bar claims against the State of New Jersey, never entertaining any notion of local exceptionalism. *See, e.g., Duhne v. State of New Jersey*, 251 U.S. 311, 313, 40 S. Ct. 154 (1920); *Meyer v. State of N. J.*, 460 F.2d 1252, 1253 (3d Cir. 1972) ("The Eleventh Amendment to the Constitution bars an action for money damages in a federal court against the State . . . . The State of New Jersey cannot be sued under the Civil Rights Act, 42 U.S.C. § 1983.") (citations and quotations omitted); *Citizens' Comm. for Envtl. Prot. v. U. S. Coast Guard*, 456 F. Supp. 101, 112 (D.N.J. 1978) ("The State of New Jersey may not be sued without its consent in a federal trial court by one of its own citizens under the Eleventh Amendment").[6]

---

[6] The States are not free to select, cafeteria-style, among Constitutional amendments. Once duly adopted, they become part of our federal Constitution. *See* U.S. Const., art. V ("amendments ... shall be valid to all intents and purposes, as part of this Constitution, when ratified by the legislatures of three fourths of the several states, or by conventions in three fourths thereof....").

7

So the Eleventh Amendment argument is very dubious. But in any event, it is moot. Whether immune or not, the State is not a "person" amenable to suit under Section 1983. *See Hafer, supra; Will, supra; Quern, supra.*

Harris also concedes that the remaining individual defendants are immune insofar as they are sued in their official capacities, but states that they remain liable in their individual capacities. (Harris Brf. at 10) As to State Troopers Soto and Crawford, this makes sense. As state officials, they are immune. But to the extent these state employees are named in their individual capacities, they are amenable to suit under § 1983 as "persons." And as such, they may assert personal defenses to liability, such as qualified immunity. *Hafer*, 502 U.S. at 25, 112 S. Ct. at 362; *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 856 (3d Cir. 2014).

Harris, in making this argument, also lists Acting Attorney General Loughy and State Police Chief Fuentes. The Amended Complaint, however, makes no allegations against Loughy or Fuentes. Any distinction between their official and personal capacities is therefore beside the point.

What remains, then, is a Section 1983 claim for damages against the two State Troopers, Soto and Crawford, in their personal capacities.

### B.   Vicarious Liability

The parties have spilled a great deal of ink on the issue of vicarious or *Monell*-style liability of the State of New Jersey and the NJSP, based on their status as policy makers or their failure to train and supervise the Troopers.

The short answer is that it does not matter:

> [A] Plaintiff cannot circumvent the State's sovereign immunity by alleging *Monell* liability under section 1983. Specifically, *Monell* liability only attaches to local governments, and does not attach to the State or its agencies. *See Monell*, 436 U.S. at 690 ("Congress did intend *municipalities and other local government* units to be included among those persons to whom § 1983 applies.") (emphasis added); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (holding that *Monell* is not applicable to "States or governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes"). As such, having found that the New Jersey Departments of Health and Human Services and the

8

> Hudson County Prosecutors Office are "arms of the state" for Eleventh Amendment purposes, this Court need not analyze whether Plaintiff has sufficiently ple[d] a claim of *Monell* liability as against these Defendants. *See Briggs v. Moore,* 251 Fed. Appx. 77, 70 (3d Cir.2007) (unpublished) ("[T]he Monmouth County Prosecutor's Office is not a separate entity that can be sued under § 1983. *Even if it were,* Plaintiff did not claim that his allegedly unconstitutional arrest was the result of a municipal custom or policy.") (emphasis added).

*Rouse v. New Jersey Dep't of Health & Human Servs.,* No. CV 15-01511 (JLL), 2015 WL 5996324, at *4 (D.N.J. Oct. 13, 2015). *See also Quern v. Jordan,* 440 U.S. at 338–39, 99 S. Ct. at 1144 (*Monell* applies to local government units not considered part of the State for purposes of Eleventh Amendment, and it casts no doubt on holdings that the State itself is immune and that § 1983 does not abrogate that immunity).

The State and NJSP are immune, and are not "persons" who may be sued directly under § 1983. It follows that they cannot be found vicariously liable, either.

### C. Statute of Limitations

Defendants seek dismissal of various causes of action that are in the Amended Complaint, or which they are afraid *may* be in the Amended Complaint, as untimely. Under Fed. R. Civ. P. 8(c), the statute of limitations constitutes an affirmative defense to an action. Under the law of this and other Circuits, the limitations defense may nevertheless be raised on a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Const. Corp.,* 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.,* 514 F.2d 1092, 1094 (3d Cir. 1975)).

Section 1983 borrows the applicable state's personal injury statute of limitations. *See Vickers v. Childs,* 530 F. App'x 104, 105 (3d Cir. 2013). In New Jersey, that statute of limitations for personal injury claims is two years. N.J. Stat. Ann. § 2A:14-2(a). The date that a § 1983 claim accrues, however, is determined by federal law. *See Kach v. Hose,* 589 F.3d 626, 634 (3d Cir. 2009)

9

(citing *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)). "Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Id.* (internal quotation marks and citations omitted). "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)).

The primary, perhaps the only, claim in the Amended Complaint is a Section 1983 claim of malicious prosecution. Malicious prosecution under 42 U.S.C. § 1983 requires that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014) (citing *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)).

The last event necessary to complete the Constitutional tort of malicious prosecution, then, is element 2: that the underlying criminal case be resolved in the plaintiff's favor. For such malicious prosecution claims, then, the two-year limitations period begins to run on the date that proceedings are terminated in the plaintiff's favor. *See, e.g., Desposito v. New Jersey*, 2015 WL 2131073, at *11 (D.N.J. May 5, 2015) (collecting cases); *Torres v. McLaughlin*, 163 F.3d 169, 177 (3d Cir.1998); *see also Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994). Here, Mr. Harris's judgment of acquittal was entered on or about March 2, 2016, and this complaint was filed on May 5, 2016. The malicious prosecution claim is obviously timely.

The original complaint asserted a number of other causes of action. These seem to haunt the Amended Complaint, although they are not explicitly asserted as counts or causes of action. As mentioned above, the First Claim,

though clearly presented as a malicious prosecution claim, mentions other theories in passing. Specifically, in the course of the "custom and practice" vicarious liability allegations, the Amended Complaint throws in a laundry list of other theories: unreasonable seizure of Mr. Harris's person; excessive force in the arrest; failure to provide medical care; and his "selection" based on race. (AC ¶¶ 56–57)

These references are insufficient to persuade me that the plaintiff, while dropping counts from his original complaint, really intended to continue asserting these additional theories. Assuming *arguendo* that such theories remain in the complaint, however, I note the following regarding the statute of limitations.

A Fourth Amendment § 1983 claim will accrue at the time of the allegedly wrongful search or seizure. *See Voneida v. Stoehr*, 512 F. App'x 219, 221 (3d Cir. 2013) (per curiam); *Woodson v. Payton*, 503 F. App'x 110, 112 (3d Cir. 2012) (per curiam); *Castro v. Perth Amboy Police Dep't*, 2014 WL 229301, at 3 n.1 (D.N.J. Jan. 21, 2014). A § 1983 false arrest claim likewise accrues at the time of the arrest. *See Torres v. McLaughlin*, 163 F.3d 169, 176 (3d Cir. 1998); *Love v. Shockley*, 2015 WL 71162, at *2 (D.N.J. Jan. 6, 2015). A § 1983 claim of excessive force in connection with an arrest likewise accrues at the time of the arrest. *Brown v. Buck*, 614 F. App'x 590, 592 (3d Cir. 2015); *Smith-Harper v. Thurlow*, No. 15-1254 BK JS, 2015 WL 4879007, at *3 (D.N.J. Aug. 14, 2015). What these causes of action have in common is that they are complete, and the plaintiff is necessarily aware of his or her injury, at the time of the commission of the tortious act.

Here, Mr. Harris's date of arrest was May 1, 2014. The acts of which he complains under these alternative theories took place then, and he obviously was aware of his alleged injury at that time. The two-year statute of limitations, then, expired on May 1, 2016. This complaint was filed on May 5, 2016—four days outside of the limitations period. To the extent that the plaintiff may intend to assert these alternative theories then, they appear to be time-barred.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. All claims are dismissed against all defendants, *except* that the motion to dismiss is denied with respect to section 1983 claims of malicious prosecution against defendants Fidiberto Soto and Damon Crawford in their personal capacities. A separate order is filed herewith.

Dated:  December 21, 2016

HON. KEVIN MCNULTY, U.S.D.J.